336 So.2d 1271 (1976)
RELIABLE FINANCE COMPANY, a Florida Corporation, Appellant,
v.
Eddie C. AXON and Gladys Thomas Axon, Appellees.
No. 75-1832.
District Court of Appeal of Florida, Second District.
September 17, 1976.
*1272 Wm. Fletcher Belcher, Belcher & Fleece, St. Petersburg, for appellant.
P. Allen Schofield, Bradenton, for appellees.
McNULTY, Chief Judge.
Plaintiff/appellant Reliable Finance Company brings this appeal from a final judgment in favor of defendants-appellees Eddie C. Axon and Gladys Thomas Axon, husband and wife, in an action for foreclosure of a real estate mortgage. We reverse.
On May 28, 1974, Mr. and Mrs. Axon obtained a loan from appellant in the principal amount of $2,500. They executed a promissory note requiring payment of principal and interest in thirty-six (36) monthly installments of $93.08, the first payment to be made on July 5, 1974. Payment of the promissory note was secured by a real estate mortgage on the appellees' residence and household furnishings and by a purchase money security interest in a 1970 Lincoln automobile. The automobile was being purchased for Mrs. Axon's 23-year-old son, Johnnie, but title to the automobile was taken in appellees' names. The first monthly installment was paid on August 30, 1974, and no further payments were made. On November 29, 1974, appellant filed this action against appellees to foreclose the real estate mortgage. A nonjury trial was held after which the final judgment appealed from was entered denying foreclosure.
At trial the following documents were introduced into evidence: the promissory note; a mortgage deed on the residence of appellees; a security agreement on the aforementioned 1970 Lincoln; a federal disclosure statement setting forth the cost of insurance coverage; a statement that the borrowers desired credit life and disability insurance; an authorization for a mortgagee collateral protection policy stating that the purchase of the insurance is entirely voluntary by the borrowers; an acknowledgment that the loan is secured by real estate and household furnishings; an acknowledgment of notice that the borrowers have entered into a transaction which may result in a lien on their home and that the borrowers have the right to rescind within three days; and a closing statement setting forth the distribution of the proceeds of the loan. Appellees admitted executing all of these documents except the real estate mortgage. They also testified that, although three witnesses appear on many of the papers, including the mortgage, there was only one other person besides themselves present throughout the entire transaction, i.e., one Colley, appellant's manager.
The evidence introduced at trial further shows that the appellant deducted from the principal amount of $2,500 the sum of $258.01 for joint credit life and credit disability insurance and $150.79 for property insurance in the form of fire insurance coverage on the household furnishings. The testimony of appellees was that nothing was said at the closing about insurance, although appellees acknowledged their signatures *1273 on the documents mentioned above requesting credit life and disability insurance and authorizing a mortgagee collateral protection policy, and on the closing statement reflecting disbursal of proceeds for the payments of the above premiums.
The trial court did not rule expressly on whether appellees, in fact, signed the real estate mortgage.[1] But apparently proceeding arguendo that they did, he expressly found that there was but one witness to its execution. Accordingly, he concluded as a matter of law that the mortgage lien was unenforceable. We think he erred.
At common law, attestation of a mortgage was not necessary and no Florida statute now requires it. True it is, that prior to the 1968 revision of the Florida Constitution relating to homesteads, case law required two witnesses on a mortgage against a homestead for the reason that under the prior constitutional provisions[2] a homestead could only be mortgaged by a "duly executed" instrument; and the courts uniformly held that "duly executed" under these provisions meant that such a mortgage had to be executed with the formality of a deed as required by § 689.01 of our statutes which, going back to 1891, required the presence of two subscribing witnesses.[3] The 1968 revision of the Constitution, viz. Art. X, § 4(c), however, omits the "duly executed" requirement and simply provides: "The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift... ." We have serious doubts, therefore, whether the cases prior thereto which require two witnesses to the "duly executed" mortgage of a homestead have continuing viability.
The question arises herein because, on appeal, appellees contend that the property was their homestead and that two witnesses were therefore required. We need not expressly determine that question here and now, however, for the reason that it appears the property was not homestead. Mrs. Axon testified that she owned the property with her brother, who resided in New York, and Mr. Axon testified that he owned no real estate whatsoever. By their own testimony, therefore, the evidence would not support a finding that the property was homestead. Under such circumstances, clearly two witnesses were not necessary for the validity of the mortgage.
We must return, now, to the question of whether the Axons did, in fact, execute the mortgage. They denied it in their pleadings and, as noted, they denied it in their testimony. While we have indicated by a footnote, supra, that a comparison of the signatures on the mortgage with the admitted signatures on all the other instruments indicates that they did sign the mortgage, it is not the province of an appellate court to so conclude as an operative fact. The trial judge, as we pointed out, did not expressly rule on the matter. Rather, he apparently assumed arguendo that they did sign it for the reason that he was ruling in their favor on other grounds, to wit: the lack of two witnesses. We have hereinabove held that he was in error with respect to those grounds. Therefore, it is crucial that the issue of whether the Axons in fact executed the mortgage be determined. The cause must be remanded for that purpose.
Since that is the present posture of the case, it appears propitious now to consider the second point raised on this appeal, that relating to whether the Axons were fully advised as to their rights under the various "truth in lending laws" relating to their options in the purchase of insurance. The trial court expressly found that they were *1274 not adequately advised of their rights in this regard, even though he found that they did sign the various documents relating thereto and, indeed, the Axons admitted so signing. We think the court erred in this regard too.
The law is clear that a party to a writing cannot deny its contents on the ground that he signed it without reading it, unless he avers facts showing circumstances which prevented his reading it or that he was induced by statements of other parties to desist from reading it.[4] Here the only explanation made by the Axons was that appellant's office manager pushed the papers in front of them for their signatures as fast as they would sign them. This, we think, falls far short of establishing circumstances sufficient to avoid the rule, which was well expressed by our Supreme Court in All Florida Surety Company v. Coker.[5] Quoting with approval from 12 Am.Jur. Contracts, § 137, the court said:[6]
"Ignorance of the contents of an instrument does not ordinarily affect the liability of one who signs it.... The courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party cannot avoid the contract on the ground of mistake if he signs it without reading it... . It is the duty of every contracting party to learn and know its contents before he signs and delivers it... . To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence were admissible."
Here, no less than four separate instruments relating to insurance were admittedly signed by the Axons: the federal "truth in lending" form, the two forms requesting or authorizing credit life and mortgagee protection and the closing statement showing disbursements for premiums. Moreover, no legally sufficient excuse appears for their claimed ignorance of the contents thereof. Under the above-quoted general rule, therefore, they are bound thereby.
In view whereof, the judgment appealed from should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
BOARDMAN, J., and SCHWARTZ, ALAN R., Associate Judge, concur.
NOTES
[1] It appears from even a cursory comparison with the admitted signatures on all the other documents that they did sign the real estate mortgage.
[2] See, e.g., Fla. Const. art. X, §§ 1 and 4 (1885), as amended in 1964.
[3] See Perry v. Beckerman (Fla. 1957), 97 So.2d 860, and the cases cited therein; also cf. Zimmerman v. Diedrich (Fla. 1957), 97 So.2d 120.
[4] See 7 Fla.Jur., Contracts, § 17, p. 77.
[5] (Fla. 1956), 88 So.2d 508.
[6] At p. 510.