**Mary BENOAY, Plaintiff,**

v.

**E.F. HUTTON & COMPANY, INC., Prudential–Bache Securities Inc., f/k/a Bache Halsey Stuart Sheilds, Inc., and Alan Stark, Defendants.**

**No. 82–6709–Civ.**

United States District Court, S.D. Florida.

Jan. 8, 1988.

■

---

Russell Forkey, Fort Lauderdale, Fla., for plaintiff.

Kathy M. Klock, Miami, Fla., for defendants.

## ORDER COMPELLING ARBITRATION

PAINE, District Judge.

This cause is before the Court on the defendants, Prudential–Bache and Alan Stark's renewed motion to compel arbitration (D.E. 115). In September, 1985, this Court entered an Order compelling arbitration of Counts IV and VIII of the complaint, and stayed the plaintiff's remaining claims pending the resolution of those claims which were to be arbitrated. (D.E. 83). That Order was reversed in part by the Eleventh Circuit Court (D.E. 89), which

held that plaintiff's remaining federal claims could not be stayed pending arbitration, and that arbitration of any of plaintiff's claims could not be ordered unless and until this Court had first determined that the arbitration agreements were valid. 805 F.2d 1437 (11 Cir.1986). Upon receipt of the mandate, we ordered the parties to submit additional memoranda regarding the validity of the arbitration agreements (D.E. 91). Each party requested additional time to respond to our Order (D.E. 92, 93 and 98). Those motions were granted (D.E. 101), however, we directed the plaintiff to specify whether her claims regarding the validity of the arbitration agreements were directed to the account agreement as a whole, or whether they were only directed to the arbitration clause. The plaintiff did not really answer this question—she simply responded that she wished to conduct discovery only as to the validity of the arbitration clause (D.E. 105). Thereafter, discovery requests on that issue were submitted to the defendants.

The defendants [1] then filed their renewed motion to compel arbitration as to all of the claims asserted against them in the amended complaint, based on the recent Supreme Court decision of *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). (D.E. 115). In response, (D.E. 120) the plaintiff essentially argued that arbitration cannot be legally compelled until it is determined that the arbitration agreement is not invalid. The plaintiff has repeatedly alleged that the arbitration agreement at issue here is unenforceable.

As the appellate court noted in its opinion, plaintiff's allegations respecting unequal bargaining power, unconscionability, duress, lack of mutuality and fundamental unfairness are merely generalized conclusions. Since we did not make specific findings in our order of September 10, 1985 regarding plaintiff's contentions, this cause was remanded so that we could do so. Since that time, the plaintiff was permitted to take discovery on the issues regarding the validity of the arbitration clauses (although there was never any order preventing such discovery). Nothing has been filed by the plaintiff since the parties stipulated to the withdrawal of one of plaintiff's discovery requests (D.E. 122).

*Renewed Motion to Compel Arbitration*

The defendants have moved to compel arbitration of all the claims asserted in the amended complaint against them pursuant to paragraph 14 of the customer agreement between Prudential–Bache and Benoay which states, in pertinent part, that, "[a]ny controversy arising out of or relating to my account, to transactions with or for me or to this Agreement, or the breach thereof ... shall be settled by arbitration ... in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect."

The Federal Arbitration Act, 9 U.S.C. §§ 1–14 applies when a party seeks to enforce a written agreement to arbitrate a civil dispute in a federal district court having jurisdiction pursuant to Title 28 of the United States Code. 9 U.S.C. § 4. The act provides that a written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, "shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The purpose and effect of the Act is to encourage the arbitration of civil disputes outside the judicial forum. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, where certain claims come within the purview of the Act, and where there is no issue regarding the validity of the arbitration clause or plaintiff's failure to arbitrate, courts must compel arbitration. *See, Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238,

---

**1.** Defendant E.F. Hutton has not made any motion to compel arbitration, as no arbitration agreement between E.F. Hutton and the plaintiff was made.

84 L.Ed.2d 158 (1985). *Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co. (Pemex)*, 767 F.2d 1140 (5th Cir.1985).

■ In the case at bar, the transactions upon which plaintiff's claims rest involve commerce, and, therefore, the Act applies to the agreement under consideration here. There is no dispute that the plaintiff has failed or refused to arbitrate these claims (the mere fact that plaintiff has filed this lawsuit belies any inference that the plaintiff is amenable to arbitration). We must grant the motion to compel arbitration, provided that the claims asserted by the plaintiff are arbitrable claims, and provided that the arbitration clause is a valid and enforceable one.

■ Generally, any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See, Howard Electric and Mechanical Co., Inc. v. Frank Briscoe Co., Inc.*, 754 F.2d 847 (9th Cir.1985); *Mobile Oil Corp. v. Local 8–766 Oil, Chemical and Atomic Workers International Union*, 600 F.2d 322 (1st Cir. 1979). Claims relating to Brokerage Agreements, such as the one under consideration here, are "the archetypal kinds of disputes referrable to arbitration." *Macchiavelli v. Shearson, Hammill & Company, Inc.*, 384 F.Supp. 21, 30 (E.D.Calif. 1974). Recently, the Supreme Court decided that claims asserted under Section 10(b) of the Securities & Exchange Act of 1934 [15 U.S.C. § 78j;] and the Federal RICO Act [18 U.S.C. § 1961 *et seq.*] are arbitrable claims. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) [overruling *Wolfe v. E.F. Hutton and Co.*, 800 F.2d 1032 (11th Cir.1986) and *Tashea v. Bache, Halsey, Stuart, Shields, Inc.*, 802 F.2d 1337 (11th Cir.1986)]. Accordingly, we hold that counts VI and VII are arbitrable claims.

*McMahon* did not directly hold that claims under Section 12(a) of the Securities Act of 1934 (as alleged in count I of the amended complaint) are also arbitrable, but, as the defendants point out, the *McMahon* court certainly indicated that had that issue been before the court, there is every likelihood that the Arbitration Act would have been held applicable to such claims. In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that claims asserted under Section 12(2) of the Securities Act of 1933 were not subject to arbitration. The Court's decision was based on two other sections of the 1933 Act—Section 22(a), which provides for concurrent jurisdiction in state and federal courts over claims asserted under the 1933 Act and Section 14 which renders void "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the commission. . . ." 15 U.S.C. § 77n. Thus, the *Wilko* Court determined that agreements to arbitrate could not be enforced because they required affected persons to waive compliance with the statutory provision giving state and federal courts concurrent jurisdiction over claims asserted under the Securities Act of 1933.

The Securities and Exchange Act of 1934 contained almost identical provisions in Sections 27 and 29, respectively [15 U.S.C. §§ 78aa and 78cc]. Applying the *Wilko* doctrine to the 1934 Act claims, the circuit courts across the country uniformly held that such claims were not arbitrable. *See, e.g., McMahon*, at ——, 107 S.Ct. at 2349 n. 6 (Blackmun, J., concurring in part and dissenting in part). The Supreme Court rejected the *Wilko* doctrine in *McMahon*, and refused to extend *Wilko's* reasoning to 1934 Act claims. *Id.* at ——, 107 S.Ct. 2351. The *McMahon* court explained that Section 29 only prohibits waiver of the *substantive* obligations imposed by the 1934 Act, and, since Section 27 (the jurisdictional section) does not impose any statutory duties, a waiver of that section does not constitute a waiver of "compliance with any provision" of the 1934 Act. *Id.* at ——, 107 S.Ct. 2338. In short, the court determined that "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."

*Id.* at ——, 107 S.Ct. at 2339, (quoting from *Mitsubishi Motor Corp. v. Soler–Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)).

At this point, one might ask, "where does that leave *Wilko?* " As the Court noted, *Wilko* was decided at a time when the courts distrusted the arbitration forum, and judicial direction was needed to protect the investor's substantive rights created by the Securities Act. Thus, "*Wilko* must be understood ... as holding that the plaintiff's waiver of the 'right to select the judicial forum' ... was unenforceable only because arbitration was judged inadequate to enforce the statutory rights created by § 12(2)." *Id.* at ——, 107 S.Ct. at 2338. Recognizing that there has been a judicial *volte-face* in the ensuing years with respect to arbitration agreements,[2] the Court went on to say that "*Wilko* must be read as barring a waiver of a judicial forum only where arbitration is inadequate to protect the substantive rights at issue." *Id.* at ——, 107 S.Ct. at 2339. The necessary corollory to that rule, then, is that where arbitration *is* adequate to protect "the substantive rights at issue" *Wilko* does not apply, and arbitration will be compelled. *Id.,* 107 S.Ct. at 2339.

Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j] makes it unlawful

for any person, directly or indirectly, by the use of any means or instrumentaility of interstate commerce or of the mails, or of any facility of any national securities exchange—

To use or employ, in connection with the pruchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

In comparison, Section 12(2) of the Securities Act of 1933 provides that any person who

offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care couldnot have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any damages if he no longer owns the security.

There is nothing to show that judicial resolution is more necessary where 1933 Act claims are asserted than where 1934 Act claims are asserted. In other words, there is no valid reason why the arbitration forum should not be available where 1933 Act claims are alleged.

■ As the defendants point out, "*Cessante Ratione Legis, Cessat Et Ipsa Lex* " applies to the issues before us. Translated, the phrase means that "the reasoning of the law ceasing, the law itself also ceases." Although the *McMahon* court stated that "*stare decisis* concerns may counsel against upsetting *Wilko's* contrary conclusion under the Securities Act", *Id.* at ——, 107 S.Ct. at 2341, the *Wilko* doctrine was

---

**2.** *See, Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Mitsubishi Motors Corp. v. Soler–Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Moses Cone Memorial Hospital v. Mercu-* *ry Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); and *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1981).

certainly undermined by *McMahon*, if not actually emasculated. Accordingly, we find that the Arbitration Act applies to claims asserted under Section 12(2) of the Securities Act of 1933, and that the claim asserted in Count V of the plaintiff's amended complaint is arbitrable.

We now turn to plaintiff's claims that the arbitration clause in the customer agreement is invalid and unenforceable. Essentially, the plaintiff argues that paragraph 14 of the customer agreement is void and not enforceable due to unconscionability, lack of mutuality of obligation, the fact that it is an adhesion contract, duress and fraud in the inducement. As previously stated, an arbitration agreement will be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Having determined that the claims asserted by the plaintiff against defendants Prudential Bache and Stark are within the purview of the Arbitration Act, it only remains for us to conduct some inquiry into the validity of the arbitration clause. In our September, 1985 Order, we did not make such a determination.

The plaintiff contends that the arbitration clause is a contract of adhesion and is unconscionable and therefore should not be enforced. In support of her claim of unconscionability, the plaintiff states that the arbitration provision of the contract was printed in a standardized "form" contract, was in unremarkable type size, that she was given no meaningful choice in the matter of its inclusion (or exclusion) in the customer agreement and that the arbitration clause was unreasonably favorable to the defendant in that it usurped the plaintiff's right to judicial remedies (such as punitive damages).

█ As we stated before, the federal policy favoring arbitration over litigation requires courts to construe arbitration clauses generously, resolving all doubts in favor of arbitration. *Seaboard Coast Line Railroad Company v. Trailer Train Company*, 690 F.2d 1343, 1348 (11th Cir.1982). Similar arbitration clauses agreed to under circumstances which are parallel to those alleged by the plaintiff here have been upheld against like charges of unconscionability. We see no reason to hold otherwise.

For instance, in *Arkoosh v. Dean Witter & Company, Inc.*, 415 F.Supp. 535 (D.Nebraska 1976), the Court stated that the use of a standard "form" contract and the existence of relatively unequal bargaining positions, standing alone, would not invalidate an otherwise valid contract, or any particular term in that contract, as long as that term is not *unreasonably* favorable to the stronger party. *Id.* at 543 (emphasis theirs). The court went on to conclude that an arbitration clause contained in a standard "form" contract which requires a party to waive their right to a trial by jury in favor of arbitration does not, in and of itself, place either party under an unreasonable burden or give either party an unreasonable advantage. *Id.* at 544. In the absence of any allegation that the arbitration clause was *imposed* upon the plaintiff, it can not be unconscionable. Other courts have adopted this reasoning. *See, e.g., Baselski v. Paine Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535 (N.D.Ill.1981) (Submission of claims to arbitration does not result in an unknowing forfeiture of plaintiff's right to punitive damages where plaintiff read, or had opportunity to read, the contract containing the clause. Signing the contract with the arbitration clause in it constitutes a waiver of the right to punitive damages); *See, also, E.F. Hutton & Co. v. Schank*, 456 F.Supp. 507 (D.Utah 1976) (Broker's failure to explain terms of customer agreement, including arbitration clause, does not mean that clause is unconscionable).

An unconscionable contract or provision is one which " .... no man in his senses would make on the one hand, and as no honest and fair man would accept on the other." *Bennett v. Behring Corp.*, 466 F.Supp. 689, 695 (S.D.Fla.1979). There is nothing unfair about the agreement plaintiff signed. She is not deprived of any right to have her dispute resolved by a neutral tribunal. Plaintiff does not allege that she attempted to negotiate the arbitration clause without success, or that the

clause was "buried" in a mound of paper. The customer agreement is one page long, the type for each clause is the same. We find that the arbitration clause contained in the customer agreement signed by the plaintiff[3] was not a contract of adhesion and was not unconscionable under the circumstances.

■ Plaintiff next contends that the agreement to arbitrate lacks consideration or mutuality of obligation. This we find to be totally without merit. The consideration exchanged for one party's promise to arbitrate is the other party's promise to arbitrate. *Hellenic Line Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir.1967); *Sauer–Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). Counsel for the plaintiff, who cites *Hull v. Norcom, Inc.*, 750 F.2d 1547 (11th Cir.1985) as contrary authority for the aforementioned proposition, misconstrues the import of the *Hull* decision. The Court in *Hull* refused to enforce the arbitration clause in that case on the ground that it lacked mutuality of obligation because the defendants in that case had reserved the right, in another clause of the contract, to proceed in a judicial forum. In other words, *Hull* stands for the premise that, in the absence of any other clause in a contract whereby one party reserves the right to a judicial forum to settle a dispute, mutual promises to arbitrate will be enforced.

■ The fact that the customer agreement was not signed by Prudential–Bache or Mr. Stark does not render the agreement unenforceable, especially where those defendants, by their words and/or actions, have exhibited an intent to be bound by its terms. *See, e.g., Breyer v. First National Monetary Corp.*, 548 F.Supp. 955, 598, n. 5 (D.N.J.1982). Furthermore, pursuant to Florida law, the customer agreement was "signed" by Prudential–Bache, since the agreement had its name printed on it.[4]

See, e.g., Fla.Stat. § 671.201(39)(1985) and comments thereto; *See, generally,* 11 Fla. Jur. 2d *Contracts* § 79 (1979). Thus, we reject plaintiff's claim that the arbitration clause lacked mutuality of obligation or consideration.

■ In support of her claim that she was induced to enter into the arbitration agreement by fraud or undue influence (overreaching), the plaintiff alleges that Stark represented that the customer agreement was a mere formality, necessary to accomplish the transfer of the plaintiff's account from E.F. Hutton to Prudential–Bache. Plaintiff states that Stark failed to inform her of the arbitration clause contained in the customer agreement, failed to explain its ramifications,—i.e. its effect on her right to a judicial forum for the resolution of disputes—and failed to provide her with any literature or material explaining arbitration.

A party who signs an instrument is presumed to know its contents. *Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817 (5th Cir.1975). He cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions. *Id.* at 826. *Cf., St. Petersburg Bank & Trust Company v. Boutin*, 445 F.2d 1028 (5th Cir.1971); *Reliable Finance Co. v. Axon*, 336 So.2d 1271 (Fla. 2d DCA 1976). In short, the plaintiff's failure to read the customer agreement before signing it does not render that instrument unenforceable. There is no allegation that the plaintiff was prevented from reading the agreement or that she was induced by Stark to refrain from reading it. Stark's statements to the effect that the plaintiff's signature was required on certain documents, in order to transfer her account to Prudential–Bache changes nothing. Stark's characterization of those documents as a "formality" changes nothing. Such a statement does not amount to a misrepresentation—Mrs.

---

**3.** For our discussion regarding the signing of this agreement, *See, infra* at p. 1530.

**4.** The Agreement has the name "Bache–Halsey, Stuart, Shields, Inc." in the right-hand corner. Defendant later changed its name to "Prudential–Bache".

Benoay had an opportunity to read the document before she signed it. As Judge Gonzalez stated in *Boyd v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 614 F.Supp. 940 (S.D.Fla.1985),

> [i]n the final analysis plaintiff's failure to read the arbitration clause was not due to defendant's misrepresentations. There simply is no evidence to support that position. The court is left with a customer who did not examine the arbitration clause because she did not want to or did not know [any] better. Under these circumstances, the plaintiff cannot be heard to complain about the arbitration provision. The law is clear that a party cannot be excused from a contract that she has signed simply because she failed to read or understand its terms by her own doing.

Under Florida law the plaintiff would be required to show that the defendant(s) (1) made a false representation of material fact; (2) with knowledge of its falsity; (3) with an intention to induce another to act upon the representation; (4) that the other party did act in justified reliance on the representation; and, (5) resulting in injury to the other party. *Suntogs of Miami, Inc. v. Burroughs Corp.*, 433 So.2d 581 (Fla. 3d DCA 1983). The facts alleged by the plaintiff do not amount to a fraud under Florida law.

■ The plaintiff also argues that she is entitled to a jury trial on the issues relating to the validity of the arbitration agreement. That is not so. First, the issues plaintiff raises, especially those concerning fraud, do not really concern the arbitration clause at all—they concern the validity of the entire customer agreement. So, even if we were to find that the plaintiff had alleged a fraud, we would also be required to find that the fraud related to the making of the entire agreement, not just the arbitration cause. In that case, the issue of fraud would be for the arbitrators to decide, not the court. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 503–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967); *Benoay v. Prudential–Bache Securities, Inc.*, 805 F.2d 1437, 1441 (11th Cir.1986).

Second, in order to be entitled to an evidentiary hearing regarding the making of the arbitration agreement, the issues plaintiff raises must be *genuine*. *See, Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4 (2d Cir. 1981); *Almacenes Fernandez, S.V. v. Golodetz*, 148 F.2d 625 (2d Cir.1945). The plaintiff raises no genuine issue regarding the unconscionability of the arbitration clause (including her claim that it is a contract of adhesion) or that it lacks mutuality of obligation. If the plaintiff's allegations of fraud in the inducement were sufficient to raise a genuine issue—and we do not agree that they were—that would be a matter for the arbitrators to decide. So, the only question we need to address is plaintiff's contention that the signature on the customer agreement *might not* be hers.

The plaintiff does not unequivocally deny that she made the agreement. Instead, she states that she does not recognize the customer agreement, that if the signature on the agreement is hers, then the customer agreement must have been one of documents that was presented to her for her signature, that she did not know that the arbitration clause was in the customer agreement, that if she had known that the arbitration clause was in the agreement, she would not have signed it, that she did not understand the effect of the arbitration provision, and that she did not agree to arbitrate.

The plaintiff did not know of the arbitration clause because she never read the document. She does not deny that she signed the customer agreement—she simply isn't sure. If she *did* sign the agreement (without reading it), then she agreed to submit her claims to arbitration, regardless of what she would have done had she read the agreement. Since there is not an outright denial that she signed the customer agreement, the plaintiff is not entitled to a jury trial. *Almacenes Fernandez*, 148 F.2d at 628.

In view of all of the foregoing, it is hereby

ORDERED and ADJUDGED as follows:

1. The defendants' [Prudential–Bache and Stark] renewed motion to compel arbitration is Granted. The claims asserted by the plaintiff against those defendants in Counts V, VI, VII and VIII shall be submitted to arbitration in accordance with the parties' agreement to arbitrate. Any party may apply to this Court for an Order confirming any damages the arbitrator(s) may award.

2. The plaintiff's remaining claims against E.F. Hutton and Stark, as set forth in Counts I through IV of the complaint are set for trial during the calendar period beginning Monday, June 27, 1988. Calendar call will be held in West Palm Beach on Friday, June 17, 1988. A joint pretrial stipulation must be filed on or before the date of calendar call. The discovery cut-off date will be 10 days before calendar call. All pre-trial motions must be filed on or before the discovery cut-off date.

DONE and ORDERED.