Roy DIXON, Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC., et al., Defendants.

Case No. 10–80216–CIV.

United States District Court, S.D. Florida.

May 7, 2010.

Roy Dixon, Royal Palm Beach, FL, pro se.

William Patrick Heller, Nathaniel Dwight Callahan, Akerman Senterfitt, Akerman Senterfitt & Eidson, Fort Lauderdale, FL, for Defendant Countrywide Home Loans, Inc.

### ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT; DISMISSING COUNTRYWIDE HOME LOANS, INC.

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Countrywide's Motion to Dismiss Amend-

ed Complaint [DE–14], filed herein on March 31, 2010. The Court has carefully considered the Motion, Plaintiff's Traverse to Countrywide's Motion to Dismiss [DE–15] ("Response"), Countrywide's Reply [DE–16], and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff Roy Dixon ("Dixon") filed the above-styled action on January 20, 2010, in the Circuit Court in and for the Fifteenth Judicial Circuit, Palm Beach County, Florida, alleging claims against Countrywide Home Loans, Inc. ("Countrywide"), Bank of America ("BAC") and Angelo R. Mozlio ("Mozlio"). Countrywide thereafter removed the action on February 10, 2010 [DE–1] pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship and the amount in controversy exceeds $75,000.00. On February 22, 2010, Plaintiff filed its Motion for Leave to File Second Amended Complaint [DE–7], which was granted by the Court on February 23, 2010 [DE–8]. The Amended Complaint named only Countrywide and Mozlio as Defendants. There is no evidence that Mozlio has been served with a summons or copy of the Amended Complaint. Accordingly, it appears to the Court that only Countrywide has been served in this matter and, therefore, the action is presently only at issue as to Countrywide.[1]

In the Amended Complaint, Plaintiff alleges that he contacted Defendants on January 20, 2007, regarding refinancing a subprime adjustable 5% interest rate loan that he held with Homecoming Financial Corporation that was due to balloon in December of 2007. Plaintiff alleges Defendants promised during the preparation of his uniform residential home loan application ("URLA") [DE–10, Ex. A] over the phone that Plaintiff would receive a fixed interest rate of 6.375% for 30 years and that the rate would be locked-in for 30–days from the application date. Plaintiff alleges that on January 25, 2007, Defendants came to Plaintiff's home to close on the loan and at that time advised Plaintiff that the loan would be changed from a 6.375% fixed interest rate to an adjustable interest only rate of 6.875% due to Plaintiff's credit score. Plaintiff further alleges he informed Defendants that their agreement was for a 6.375% fixed interest rate for 30 years and that the rate was locked-in for 30–days. Plaintiff contends that Defendants deceived and misrepresented to Plaintiff that the 6.875% interest only adjustable rate would be reduced to a 6.250% fixed interest rate after six (6) years and that Plaintiff would not find a better rate. Nevertheless, Plaintiff claims he did not cancel the loan because he already paid the appraisal fees and Defendants represented that the 6.875% interest rate would be reduced in six (6) years.

Plaintiff alleges he subsequently made his mortgage payments for two years. However, in January of 2009 Plaintiff notified Defendants that he needed a modification on his loan because he could not afford to make full monthly mortgage payments due to an increase in his taxes and insurance. Plaintiff alleges that he also asked Defendants if they had any records on file that stated the 6.875% interest rate would be reduced to a fixed interest rate of 6.250% after six (6) years. Plaintiff claims Defendants indicated they had no such records on file and that the rate of 6.875% would continue to increase

1. Plaintiff previously brought a similar action against Defendants Countrywide and Mozlio in *Dixon v. Countrywide Financial Corp.*, Case No. 09–81021. Defendants Countrywide and Mozlio were dismissed without prejudice from that action on December 30, 2009 [DE–56] and December 11, 2009 [DE–47], respectively, as a result of Plaintiff's failure to comply with Rule 4(m) of the Federal Rules of Civil Procedure.

after ten (10) years. Again, in April of 2009, Plaintiff alleges he notified Defendants that he could not afford to make his full monthly mortgage payments and that he needed a modification of his loan.

Plaintiff alleges that Defendants' agent Daniel Rydzewski drafted a fraudulent URLA for Plaintiff that contained a false base employment income, included a false checking account with funds Plaintiff did not have, and included an inaccurate total asset amount for Plaintiff. Plaintiff alleges that he did not discover these inaccuracies until he reviewed the loan contract several days after closing. Plaintiff claims Defendants ignored their own underwriting standards and mislead Plaintiff into accepting the 6.875% adjustable interest rate loan while concealing or misrepresenting that much larger rates would become due. Plaintiff further alleges that Defendants violated the Truth in Lending Act, 15 U.S.C. § 1635(b) ("TILA") by inflating the settlement charges and the amount financed, and that Defendants provided unlawful kickbacks to the title company. Moreover, Plaintiff alleges that Defendants failed to provide Plaintiff with the Good Faith Estimate and the HUD special information booklet within three business days of the loan application process. Plaintiff alleges that Mozlio knew of and controlled the activities of Countrywide.

Plaintiff asserts eight counts in his Second Amended Complaint.[2] Count I is for predatory lending. In count II Plaintiff asserts a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Count III is a claim for fraud and deceit and count IV alleges negligent misrepresentation. Counts V through VII purport to be statutory claims under the Equal Credit Opportunity Act ("ECOA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Home Ownership and Equity Protection Act ("HOEPA"). Finally, in count VIII Plaintiff purports to assert a claim under TILA. Thereafter, Defendant Countrywide filed the instant Motion on March 31, 2010. [DE–14].

## II. DISCUSSION

### A. Standard of Review

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero,* 963 F.2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint, and "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* at n. 8 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683,

---

**2.** Plaintiff inadvertently has two counts identified as "Count I." As such, the Court will construe the Amended Complaint as consecutively labeling the counts as counts I through VIII.

40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

## B. Motion to Dismiss

Countrywide moves to dismiss the Amended Complaint in its entirety on the following grounds: (1) the credit agreement statute of frauds bars the fraud-based claims; (2) the fraud-based claims fail as a matter of law since the written loan documents contradict the purported oral representations making reliance upon such purported statements unreasonable; (3) the fraud-based claims are inadequately plead to the extent they rely upon representations in the URLA; (4) the fraud-based TILA claim is not cognizable and time-barred; and (5) the FDUTPA claim is conclusory and inadequately pled.[3]

■ In Plaintiff's Response, Plaintiff concedes that counts V through VII, claims under the ECOA, RESPA, and HOEPA, should be dismissed. [DE–15, pgs. 1, 10]. The Court agrees. Specifically, Plaintiff's RESPA claim in count VI fails as a matter of law since Defendant is correct that Section 2604 (which requires the provision of the Good Faith Estimate and the HUD special information booklet) does not provide a private cause of action. *See Bedasee v. Fremont Inv. & Loan,* Case No. 09–111–Ftm–29SPC, 2010 WL 98996, at \*2 (M.D.Fla. Jan. 6, 2010) (citing *Collins v. FMHA–USDA,* 105 F.3d 1366, 1368 (11th Cir.1997) ("That Congress eliminated the provision when it amended the statute strongly suggests Congress intended that there no longer be a private damages remedy for violation of § 2604(c).")). Further, to the extent Plaintiff alleges claims for

kickbacks and unearned fees, such claims are time barred as RESPA requires that such claims be brought within one year from the date of occurrence of the violation. 12 U.S.C. § 2614. As such, the RESPA claim is dismissed with prejudice.

■ Likewise, the HOEPA claim is subject to dismissal as Plaintiff fails to indicate what provision was violated or what remedy is sought in order to meet the pleading requirements of Rule 8. To the extent Plaintiff's HOEPA claim is a non-rescission claim, such a claim is dismissed with prejudice as being time barred by the one-year statute of limitation. *See Thielen v. GMAC Mortg. Corp.,* 671 F.Supp.2d 947, 953 (E.D.Mich.2009) ("TILA's one-year statute of limitations, codified at 15 U.S.C. § 1640(e), also applies to HOEPA claims."). And, to the extent the HOEPA claim is a rescission claim, such a claim is dismissed with prejudice under the three-year statute of repose. *See* 15 U.S.C. § 1635(f); *Thielen,* 671 F.Supp.2d at 953–54.[4] Finally, the ECOA claim is subject to dismissal with prejudice as Plaintiff has not alleged any discrimination and such a claim is likewise time-barred by the two-year statute of limitation. *See* 15 U.S.C. § 1691e(f). Accordingly, counts V (ECOA), VI (RESPA), and VII (HOEPA) are subject to dismissal with prejudice. The Court will address Defendant's remaining arguments in turn.

### (i) Credit Agreement Statute of Frauds Bars the Fraud–Based Claims

■ Defendant argues that Plaintiff's fraud-based claims hinge upon alleged

---

**3.** Countrywide also raises arguments related to the statutory claims (counts V through VII), but as discussed below, Plaintiff concedes that these claims should be dismissed and, therefore, these arguments will not be addressed at great length by the Court.

**4.** As discussed below in regard to Plaintiff's TILA claim, the three-year statute of response in § 1635(f) has been interpreted by the Supreme Court to permit no federal right to rescind after the 3–year period has run.

oral, pre-closing promises about loan terms differing from his express, written credit agreement. However, Countrywide argues that such allegations cannot form the basis for fraud-based claims because claims based upon alleged oral misrepresentations are barred by the statute of frauds governing credit agreements. *See* Fla. Stat. § 687.0304. Further, Countrywide argues that to the extent Plaintiff relies upon the purported misrepresentation that the interest rate would be reduced to 6.250%, the plain language of the Rate Improvement Addendum [DE–10, Ex. B] which includes this provision demonstrates that there was not a misrepresentation, but rather Plaintiff got exactly what he bargained for. As such, Countrywide argues that each of the fraud-based claims must be dismissed with prejudice. In response, Plaintiff argues that the statute of frauds does not bar his claims because there is an executed Rate Improvement Addendum which contains the purported agreement to reduce the interest rate to 6.250% on or after October 1, 2013. Further, Plaintiff argues that he has adequately alleged these claims to state a cause of action.

As matter of law, the Court concludes that Plaintiff's fraud-based claims—predatory lending (count I), FDUTPA (count II), fraud and deceit (count III), and negligent misrepresentation (count IV) are barred by the statute of frauds.[5] A credit agreement is defined as an "agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Fla. Stat. § 687.0304(1). While Plaintiff's claims are not entirely clear, Plaintiff appears to be arguing that Defendant fraudulently promised Plaintiff different financing terms then those included in the loan documents. Such purported promises represent an agreement to lend money or extend credit and, therefore, is a credit agreement requiring the application of Florida Statute § 687.0304. Yet, pursuant to Florida Statutes § 687.0304(2), a "debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." This statute has been labeled "a 'new' statute of frauds which was enacted to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement, the subsequent violation of which is actionable against the lender." *Brenowitz v. Centr. Nat. Bank*, 597 So.2d 340, 342 (Fla. 2d DCA 1992).

Nonetheless, Plaintiff is attempting to do exactly what this statute prohibits— that is, enforce the terms of a purported credit agreement that were not reduced to writing and signed by both the creditor and debtor through his fraud-based claims. Florida courts consistently hold that the statute of frauds serves to bar any claims that are "premised on the same conduct and representations that were insufficient to form a contract and are merely derivative of the unsuccessful contract claim." *Bankers Trust v. Basciano*, 960 So.2d 773, 778 (Fla. 5th DCA 2007); *see also Puff 'N Stuff of Winter Park, Inc. v. Bell*, 683 So.2d 1176 (Fla. 5th DCA 1996) (holding the fraud claim was barred by the banking statute of frauds; concluding that to allow appellant to frame an oral promise to loan

**5.** "Where federal jurisdiction is based on diversity of citizenship, the substantive law of the forum state applies." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, Florida substantive law governs this action.

money as a fraud claim to evade the statute of frauds would "effectively repeal the statute."). "To hold otherwise would allow every failed breach of contract claim to morph into a negligent misrepresentation or FDUTPA claim;" however, the "well-established laws governing contracts should not be so casually dismissed." *Id.* Therefore, the Court concludes that counts I (predatory lending), II (FDUTPA), III (fraud and deceit) and IV (negligent misrepresentation), being premised upon purported oral promises that are unenforceable under the banking statute of frauds, are barred and subject to dismissal with prejudice.

On the other hand, to the extent Plaintiff's fraud-based claims are premised upon the representation that the interest rate would be reduced to 6.250% after six (6) years, the Court agrees with Defendant that this provision is already included in the Rate Improvement Addendum. [DE–10, Ex. B]. As such, having seemingly received this provision as part of the loan documents there has been no misrepresentation by Defendant in this regard and, therefore, claims based upon this purported misrepresentation fail as a matter of law. Instead, Plaintiff has already received exactly what he is requesting here—that is, a mortgage that would be reduced to 6.250% after six (6) years upon the completion of the terms outlined in the Rate Improvement Addendum.[6]

### (ii) No Reasonable Reliance Upon Statements Contradicted by Loan Documents

■ Further, Countrywide argues that Plaintiff reviewed and signed the loan documents at closing so he could not have reasonably relied upon prior oral representations. *See Taylor Woodrow Homes Fla., Inc. v. 4/46–A Corp.,* 850 So.2d 536, 542–43 (Fla. 5th DCA 2003) (holding that a "party may not recover in fraud for an alleged false statement when proper disclosure of the truth is subsequently revealed in a written agreement between the parties."). The Court agrees and concludes that these fraud-based claims also fail as a matter of law on the grounds that Plaintiff cannot establish reasonable reliance when the purported misrepresentations that serve as the basis for Plaintiff's fraud claims are contradicted by the express terms of the loan documents.

■ To state a claim for fraud or misrepresentation, a plaintiff must allege a "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Johnson v. Davis,* 480 So.2d 625, 627 (Fla.1985). Florida courts have routinely concluded that "a party may not recover in fraud for an alleged false statement when proper disclosure of the truth is subsequently revealed in a written agreement between the parties." *Taylor,* 850 So.2d at 542–43; *see also Linville v. Ginn Real Estate Co., LLC.,* 697 F.Supp.2d 1302, 1307–08 (M.D.Fla.2010) (concluding that the plaintiff's reliance on "alleged oral misrepresentations, which contradict the express terms of the loan documents, is unreasonable as a matter of law."); *Englezios v. Batmasian,* 593 So.2d 1077, 1078 (Fla. 4th DCA 1992) ("A party may not recover in fraud

---

6. Plaintiff's only argument in this regard is that counsel for Countrywide appears to have previously indicated that there were no terms indicating a rate reset was ever considered. Yet, having presented the Rate Improvement Addendum, Countrywide appears to concede that Plaintiff already received these terms as part of his loan documents. As such, there is no injury for the Court to redress in this regard.

for an alleged oral misrepresentation which is adequately dealt with in a later written contract."). Because Plaintiff's fraud-based claims relate to purported oral promises and representations that contradict the clear terms of the loan documents, these claims fail as a matter of law.[7] As such, counts I (predatory lending), II (FDUTPA), III (fraud and deceit) and IV (negligent misrepresentation) are dismissed with prejudice on this additional ground.

### (iii) Fraud–Based Claims Fail to the Extent Relying upon Statements in URLA

■ Defendant also argues that Plaintiff's fraud-based claims fail as a matter of law to the extent they are premised upon purported misrepresentations in the URLA. Once again, the Court agrees. In *Infante v. Bank of Amer. Corp.*, 680 F.Supp.2d 1298, 1303–04 (S.D.Fla.2009), as with Plaintiff here, the crux of the plaintiff's claim was that the defendant made fraudulent statements in the URLA. However, the court found that "a loan application is a request by the borrower for a loan; it does not contain any representations by the lender." *Id.* "To the contrary, the statements contained in a URLA are the applicant's 'own statement[s] regarding his income' and are certified by the applicant when he signs the loan application, to be 'true and correct,' regardless of who assists the applicant in preparing the application." *Id.* As such, the court concluded that the plaintiff failed to allege a false statement by the defendant concerning a material fact. Similarly here, Plaintiff's fraud-based claims fail to the extent they are premised upon purported false statements in the URLA, as these statements

represent Plaintiff's statements not Countrywide's.

■ In opposition, Plaintiff simply argues that he did not know that the URLA contained false statements since he apparently did not review the URLA until after closing. Plaintiff's apparent failure to review the loan documents and the URLA is not cause to avoid his obligations thereunder, as Plaintiff himself concedes a "party to a writing cannot deny its contents on the ground that he signed it without reading it, unless he avers facts showing circumstances which prevented his reading it or that he was induced by statements of other parties to desist from reading it." *Reliable Fin. Co. v. Axon*, 336 So.2d 1271, 1274 (Fla. 2d DCA 1976). Nonetheless, even if it were true that Plaintiff did not review the URLA until after closing, such an admission further undermines Plaintiff's fraud-based claims as this negates Plaintiff's ability to allege the remaining elements—inducement, reliance or damages. First, as noted by the court in *Infante*, any purported misrepresentations contained in the URLA would have induced Countrywide to enter into the loan, not Plaintiff. 680 F.Supp.2d at 1304; *see also Matthys v. Mortg. Elec. Registration Systs., Inc.*, Case No. 09–1150, 2009 WL 3762632, at *2 (M.D.Fla. Nov. 10, 2009) ("Obviously, any alleged falsification of the Plaintiffs' income on that document would have been intended to induce action on the part of the lender, rather the[n] Plaintiffs.").

Further, Plaintiff cannot allege that he relied upon those statements in the URLA in entering into the loan when he admits he did not discover the purported false statements until after closing. *Infante*,

---

7. Further, as discussed above, to the extent that Plaintiff's claims are based upon the purported representation that the rate would be reduced to 6.250% after six (6) years, Plaintiff apparently already received these terms as evidenced by the Rate Improvement Addendum.

680 F.Supp.2d at 1304; *see also Matthys,* 2009 WL 3762632, at *2 (finding that "given that Plaintiffs contend that they were unaware of that falsehood [in the loan application], they could not have relied on it."); *Oglesbee v. IndyMac Fin. Servs., Inc.,* 686 F.Supp.2d 1313, 1316 (S.D.Fla. 2010) ("Plaintiff cannot allege that he relied on any misrepresentations regarding his income nor can he allege that he suffered an injury based on this reliance ... if the Plaintiff was unaware of the use of an inflated income to qualify him for the loan, then he cannot possibly have relied on that misrepresentation ... [o]n the other hand, if Plaintiff did know that his income was falsified then he similarly could not have relied on the misrepresentation."). Finally, Plaintiff cannot argue that he was damaged as a result of the purported false statements in the URLA, as "Plaintiff went to the bank for a loan and came out with a loan. Plaintiff cannot now contend that he was injured by receiving the very thing that he requested." *Oglesbee,* 686 F.Supp.2d at 1316. As such, the fraud-based claims are also subject to dismissal with prejudice on this additional ground to the extent these claims are premised upon purported misrepresentations contained in the URLA.

#### (iv) Fraud–Based TILA Claim Not Cognizable and Time Barred

Finally, Defendant argues that Plaintiff's TILA claim (count VIII) is not cognizable and is time-barred. Defendant argues that TILA was not intended to create a general prohibition against fraud in consumer credit transactions. Further, Defendant argues that the TILA claims are time-barred under the three-year statute of limitations for TILA rescission claims since Plaintiff's Amended Complaint—which included for the first time the TILA claim—was not filed until March 10, 2010, and under the one-year statute of limitations for TILA damages claims. In re-

sponse, Plaintiff argues that he filed his FDUTPA lawsuit in January of 2010, within the three year time limit and, therefore, asks for leniency in his pleadings.

■ The Court is not persuaded that Plaintiff's TILA claim is entitled to dismissal solely on the basis of Defendant's argument that TILA was not intended to be a general prohibition against fraud in consumer transactions. Here, Plaintiff has alleged more than mere fraud in relation to this count, but instead has alleged that Defendant failed to provide Plaintiff with correct disclosures. Nonetheless, the Court concludes that Plaintiff's TILA claim is subject to dismissal with prejudice as being time barred. There are two limitation periods under TILA depending upon the remedy sought. Where monetary damages for violations of TILA are sought, there is a one-year statute of limitations. *See* 15 U.S.C. § 1640(e) ("[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."). The violation "occurs" when the transaction is consummated. *In re Smith,* 737 F.2d 1549, 1552 (11th Cir.1984). Thus, in this case, the one-year period began to run upon the date of the closing of the loan transaction, i.e., January 25, 2007. As such, to the extent that Plaintiff seeks monetary damages under TILA, the Court agrees with Defendant and concludes that such a claim is clearly time barred by the one-year statute of limitation.

■ On the other hand, where a consumer seeks rescission of a contract for a material violation of TILA, the right to rescind "shall expire three years after the loan closes or upon sale of the secured property whichever date is earlier." 15 U.S.C. § 1635(f). Equitable tolling does not apply to claims for rescission under

TILA, because "§ 1635(f) completely extinguishes the right of rescission at the end of the 3–year period." *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). In *Beach,* the Supreme Court noted that § 1635(f) is a statute of repose and not a statute of limitation; it "says nothing in terms of bringing an action but instead provides that the 'right of rescission shall expire' at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous." *Id.* at 417, 118 S.Ct. 1408. Consequently, the Supreme Court concluded that TILA "permits no federal right to rescind, defensively or otherwise, after the 3–year period of § 1635(f) has run." *Id.* at 419, 118 S.Ct. 1408. Similarly here, the Court concludes that to the extent Plaintiff seeks rescission under TILA, such a claim is barred by the three-year statute of repose. As pointed out in *Beach,* § 1635(f) "talks not of a suit's commencement but of a right's duration." *Id.* at 417, 118 S.Ct. 1408. Therefore, regardless of when Plaintiff commenced the present action, because Plaintiff did not assert its TILA rescission right until after the three-year period expired, Plaintiff's right to seek rescission under § 1635(f) is extinguished. As such, the TILA claim in count VIII is dismissed with prejudice.[8]

### III. CONCLUSION

Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Countrywide's Motion to Dismiss Amended Complaint [DE–14] is hereby **GRANTED;**

2. Counts I (predatory lending), II (FDUTPA), III (fraud and deceit) IV (negligent misrepresentation), V (ECOA), VI (RESPA), VII (HOEPA), and VIII (TILA) are hereby **DISMISSED WITH PREJUDICE** as to Defendant Countrywide Home Loans, Inc.;

3. Countrywide Home Loans, Inc. is hereby **DISMISSED** from this action.

---

8. In regard to Plaintiff's FDUTPA claim, Countrywide makes the additional argument that Plaintiff's FDUTPA claim is conclusory and inadequately pled. However, having concluded that the FDUTPA claim fails as a matter of law and is subject to dismissal with prejudice, the Court need not reach the issue of whether the claim also fails under the pleading requirements of Federal Rules of Civil Procedure 8 and 9.